· A091 (Rev. 8/01) Criminal Complaint

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

UNITED STATES OF AMERICA
V.
Joshua Eric Elizondo

**CRIMINAL COMPLAINT**

Case Number: C-15-362M

I, the undersigned complainant state that the following is true and correct to the best of my knowledge and belief. On or about __3/26/2015__ in __Brooks__ County, in the
(Date)

Southern    District of    Texas    defendant(s), Joshua Eric Elizondo

did knowingly or in a reckless disregard of the fact that an alien had come to, entered, or remained in the United States in violation of law, transport, or move or attempt to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law

in violation of Title __8__ United States Code, Section(s) __1324__.
I further state that I am a(n) __Border Patrol Agent__ and that this complaint is based on the
following facts:                     Official Title

See Attached Affidavit of U.S. Border Patrol Agent    **Robrert Pina**

Continued on the attached sheet and made a part of this complaint:    [X] Yes   [ ] No

Signature of Complainant

**Robrert Pina**
Printed Name of Complainant

Sworn to before me and signed in my presence and probable cause found on:

__March 27, 2015__    at    Corpus Christi, Texas
Date                                          City and State

__B. Janice Ellington__, U.S. Magistrate Judge
Name and Title of Judicial Officer

Signature of Judicial Officer

Affidavit

The information contained in this report/affidavit is based upon my personal participation in the investigation, which included, but is not limited to information related to me by other agents and officers participating in the investigation.

SYNOPSIS:

On March 26, 2015, Joshua Eric ELIZONDO was encountered at the Falfurrias Border Patrol Checkpoint near Falfurrias, Texas with four illegal aliens in the trunk of the vehicle he was driving.

FACTS/PROBABLE CAUSE:

On March 26, 2015, Border Patrol Agent A. D'Amico was conducting his assigned duties at the Falfurrias Border Patrol Checkpoint located approximately 13 miles south of Falfurrias, Texas. Working alongside him was BPA J. Cervantes with his Service Canine, Xena-B.

At approximately 08:10 a.m., a silver Chevrolet Cobalt approached agent D'Amico's lane for an immigration inspection of its occupants. As the vehicle approached his position, agent D'Amico observed that the driver of the vehicle was holding a cellular phone up and close to his left ear. According to agent D'Amico, this is not a normal or common thing for pedestrians to do once they arrive to his lane of inspection. The driver, later identified as Joshua Eric ELIZONDO, stopped at agent D'Amico's position and lowered his phone slightly to answer his questions. Agent D'Amico asked ELIZONDO if he was a United States citizen, to which he replied "Yes".

Concurrent to agent D'Amico's questioning, BPA J. Cervantes utilized his service canine to conduct a non-intrusive free air sniff of the vehicle. BPA Cervantes immediately advised agent D'Amico that his canine was alerting to the rear of ELIZONDO's vehicle. Agent D'Amico then proceeded to ask ELIZONDO if he was traveling alone, he replied, "Yes". Agent D'Amico then asked ELIZONDO where he was traveling to and he replied "to Corpus Christi to pick up my wife and daughter". During agent D'Amico's questioning, it appeared to him that ELIZONDO was attempting to avoid any interaction with him, being that agent D'Amico found it uncommon and not normal that ELIZONDO appeared to be concealing his face and attention with his cellular phone. Based on agent D'Amico's previous training and experience as a U.S. Border Patrol Agent, and ELIZONDO's aforementioned unusual behavior, and the canine alert to the vehicle, agent D'Amico decided to further investigate ELIZONDO and the vehicle. At that point, agent D'Amico then asked ELIZONDO for consent to search the vehicle he was driving and ELIZONDO gave consent to search the vehicle. Agent D'Amico then instructed ELIZONDO to park his vehicle in the secondary inspection area.

Once in secondary, ELIZONDO was asked to turn off the vehicle and step out of the vehicle. As ELIZONDO exited the vehicle, he continued to stay on the phone (later claimed it was his wife) as he went to sit on the secondary bench. BPA Hector Chavez then opened the trunk and observed four individuals attempting to conceal themselves inside the trunk compartment. Through questioning, Supervisory Border Patrol Agent (SBPA) Gerardo Mercado was able to determine that all four individuals were in the United States illegally without proper immigration document that would allow them to remain in the United States legally. At this time, ELIZONDO was placed under arrest for alien smuggling and all four undocumented aliens were placed under arrest for being in the United States illegally. All subjects were escorted into the checkpoint for further processing.

Agents on the scene made the following observations while conducting a search of the vehicle incident to arrest. Agent discovered that the vehicle's rear seats adjacent to the trunk were locked in their appropriate position. The vehicle was equipped with an emergency trunk release latch on the trunk's door. The

vehicle was also equipped with a modified rear suspension (blocks on springs). According to those agents, this is a common tactic used by alien smugglers to avoid detection and apprehension by blending in with the rest of the vehicles at the checkpoint. Agents also noted that the outside temperature in the region during the time of arrest was approximately 75 degrees in Fahrenheit and approximately 94 percent in humidity.

Once inside the checkpoint, ELIZONDO was read his Miranda Rights as per Service Form I-214 in his preferred language of English. Agent F. Rivas witnessed the reading of his rights. ELIZONDO signed the form indicating that he understood his rights and was willing to make a statement without the presence of an attorney.

PRINCIPAL STATEMENT BY JOSHUA ERIC ELIZONDO;

ELIZONDO stated that he currently works at the Oasis Car Wash near McAllen, Texas. ELIZONDO stated that while working at the car wash, one of his customers who he knows only as "Rayos," spoke to him about working for him. ELIZONDO stated that Rayos told him that there was no drugs and no weapons involved only the transporting of people. ELIZONDO stated that at that time, he agreed to work for Rayos. ELIZONDO stated that Rayo's friend who he knows only as "Flaco," gave him a cell phone in order for ELIZONDO to be in contact with both Rayos and Flaco. ELIZONDO stated he was contacted that night and declined to meet Rayos because he was taking care of his daughter. ELIZONDO stated he was then contacted the following day and accepted to go to TEXMEX club in order to discuss the details of his job with Rayos and Flaco. ELIZONDO stated that Rayos and Flaco told him that ELIZONDO would drive a car with people and get them past the Border Patrol check point. ELIZONDO stated that Rayo organized a plan for him to stay at the Travel Lodge in Pharr, Texas. ELIZONDO also stated that Rayo gave him one hundred dollars in cash for him to stay at the Travel Lodge. Before heading to the Travel Lodge, Rayos put ELIZONDO on the phone with a woman in order to insure the vehicle under his name. ELIZONDO stated he was then picked up by Rayos and Flaco about midnight and taken to the Travel Lodge hotel. ELIZONDO was then contacted by Rayo who called him in the morning at about 6:30 a.m. and told him to, get ready. ELIZONDO stated that Rayo met him at the Travel Lodge parking lot where Rayo gave him the keys to the Cobalt he was arrested in. According to ELIZONDO the people were already in the vehicle and he just had to drive the people and the vehicle north. ELIZONDO stated that Rayos and Flaco drove different vehicles and that he was instructed to follow them. While following Rayos and Flaco, Rayos called ELIZONDO and instructed him to keep driving on the highway towards Corpus Christi, Texas. Rayos had ELIZONDO drive in front of his vehicle and instructed him to call after he had successfully passed the checkpoint. ELIZONDO also stated that Rayos followed him in a gray Ford F-250 with a suspension lift most of the way to the checkpoint. ELIZONDO stated that before he reached the checkpoint he saw Rayos slow down and disappear out of sight before he reached the checkpoint. ELIZONDO admitted that he was aware that people were hiding in the trunk of the vehicle. ELIZONDO stated that on the drive north to the checkpoint he heard the people making noises as they were hidden in the trunk. ELIZONDO admitted that he had agreed to smuggle people for financial gain, but was not sure of the amount. ELIZONDO stated that he expected to receive anywhere between $500 to $1,000 dollars from Rayos after the smuggling attempt. ELIZONDO also stated that he was instructed by Rayos to give Border Patrol Agents a false story as to his purpose for traveling to Corpus Christi and to tell agents that he was going to pick up his wife and daughter. ELIZONDO also informed agents that he was instructed to call Rayos once he successfully passed the Falfurrias Checkpoint to receive further instructions to the smuggling of the people in his trunk.

MATERIAL WITNESSES STATEMENTS:

Wilson GONZALEZ-Aguilar and Celeste CIFUENTES-Lopez were read their Miranda Rights in Spanish, their preferred language. GONZALEZ and CIFUENTES signed their rights accordingly, indicating they understood their rights and both provided a statement without the presence of an attorney.

MATERIAL WITNESS # 1 – GONZALEZ- Aguilar, Wilson:

GONZALEZ-Aguilar stated that he had received a phone number from a friend to help smuggle him into the United States. He made arrangements with an unknown smuggler on or about January 27, 2015 to be smuggled on March 16, 2015. GONZALEZ-Aguilar stated that he crossed the United States/Mexico International Border with one other person on a raft. GONZALEZ-Aguilar stated that after he crossed the border he walked for about three hours to a small one story house that looked abandoned. GONZALEZ-Aguilar stated that the house had one room and a bathroom and that he was there for about ten days before he was picked up by someone in a small vehicle. GONZALEZ-Aguilar stated that he was directed to get into the trunk and not to make any noise. GONZALEZ-Aguilar stated that the person who directed him in the trunk was not the driver of the vehicle. GONZALEZ-Aguilar stated he does not know the person's name who directed him in the trunk, but described him as tall, skinny, Hispanic, and with short hair. GONZALEZ-Aguilar stated that he did not see the driver before getting into the vehicle. GONZALEZ-Aguilar stated that once inside the trunk he did not hear anyone talking outside the vehicle. GONZALEZ-Aguilar stated that there were four people in the trunk including himself. GONZALEZ-Aguilar stated that he did not know how to open the trunk or what to do in case of an emergency. GONZALEZ-Aguilar stated that it was very dark and hot in the trunk and he was sweating. GONZALEZ-Aguilar stated that he was afraid for his life and was afraid of being involved a car accident with them inside and possibly dying. GONZALEZ-Aguilar stated that they did not talk about anything and made sure to stay quite. GONZALEZ-Aguilar stated that he was in the trunk about hour and a half to two hours. GONZALEZ-Aguilar stated that the vehicle did not make any stops once he was in the trunk until arriving at the checkpoint. GONZALEZ-Aguilar stated that the back seats were in the locked position and did not move. GONZALEZ-Aguilar stated that he did not smell any exhaust fumes while in the trunk. GONZALEZ-Aguilar stated that he is not sure if shown a photo lineup of the driver that he could identify him.

MATERIAL WITNESS # 2 – CIFUENTES-Lopez, Celeste:

CIFUENTES-Lopez stated that her cousin made the arrangements for her to be smuggled into the United States on or about January 28, 2015. CIFUENTES-Lopez stated that she and about twenty other people crossed the United States International Border illegally on March 5, 2015. CIFUENTES-Lopez stated that there was a male guide that led them across the river in a shallow area where they walked across. CIFUENTES-Lopez stated that after crossing the river, the group walked for about twenty minutes before being picked up by a white four door pickup truck. CIFUENTES-Lopez stated that they drove for about eleven minutes until they arrived at a two story house. CIFUENTES-Lopez stated that they put her in a room and kept her there for about three weeks. CIFUENTES-Lopez stated that she was picked up from the house by someone in a small vehicle after about three weeks. CIFUENTES-Lopez stated that she does not know his name but that he was a tall, dark, and skinny male. CIFUENTES-Lopez stated that she was directed to get in the trunk. CIFUENTES-Lopez stated that the man that directed her in the truck was not the driver of the vehicle. CIFUENTES-Lopez stated that she was told to keep quiet and that she would be in the trunk for about seven hours. CIFUENTES-Lopez stated that she did not hear anyone talking once she was in the trunk. CIFUENTES-Lopez stated that there was four people in the trunk including herself. CIFUENTES-Lopez stated that she was not told what to do in case of an emergency. CIFUENTES-Lopez stated that it was dark and she could not move at all. CIFUENTES-Lopez stated that she was in an uncomfortable position with her head between her knees and not able to move. CIFUENTES-Lopez stated that when the car would hit a bump that it was very painful because the way

she was laying in the car. CIFUENTES-Lopez stated that they all remained quiet and did not talk. CIFUENTES-Lopez stated that she did not know a way to get out of the trunk and that she would have to wait for someone to open it. CIFUENTES-Lopez stated that she did not know of a way to talk to the driver in case of an emergency. CIFUENTES-Lopez stated that the vehicle did not stop once she was in the trunk until they got to the checkpoint. CIFUENTES-Lopez stated that she did not smell any exhaust fumes while in the truck. CIFUENTES-Lopez states that she does not know if she would be able to identify the driver if shown a photo lineup.

The other two undocumented aliens found in the trunk were interviewed and did not make any exculpatory statements. The other two undocumented aliens were processed accordingly and not utilized as material witnesses being that they are juveniles.

A vehicle registration check was conducted by agents and revealed that the vehicle was not registered to ELIZONDO

CASE DISPOSITION:

As per the Rio Grande Valley Sector Prosecutions North Office, prosecution was sought on ELIZONDO under 8 USC 1324 for his felony involvement as the driver in this Criminal Alien Smuggling Case. CIFUENTES and GONZALEZ were processed accordingly and will be held as Material Witnesses for their involvement in this case (as smuggled aliens).

The facts of this case were presented to Assistant United States Attorney Elsa Salinas who accepted Joshua Eric ELIZONDO for prosecution of 8 USC 1324, Alien Smuggling.

Robert Pina
Border Patrol Agent

Sworn to before me and probable cause found on this date, the 27 of March, 2015:

B. Janice Ellington
United States Magistrate Judge